UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FRUTTA BOWLS FRANCHISING LLC, | : |
| Plaintiff, | : Civil Action No.: 18-2446 (FLW) |
| v. | : |
| JUSTIN BITNER, et. al., | : **OPINION** |
| Defendants. | : |

**WOLFSON, United States District Judge**:

This matter comes before the Court on defendants Grain & Berry Cafe, LLC, and Acai Group LLC's (the "Florida LLCs") Motion to dismiss Plaintiff Frutta Bowls Franchising, LLC's ("Plaintiff" or "Frutta") First Amended Complaint against the Florida LLCs, Justin Bitner ("Bitner"),[1] Douglas Lang ("Lang"), and Jake E. Kessler, III ("Kessler") (cumulatively, "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[2] Plaintiff's claims arise from Defendants' alleged infringement of Plaintiff's trade secrets, as well as its confidential and proprietary information, through Lang and Kessler's development of a substantially similar business. For the reasons set forth below, the Florida LLCs' Motion is **GRANTED**.

---

[1] The Court notes that although Bitner originally joined in the Motion, he subsequently entered into a settlement agreement with Plaintiff on November 1, 2018, and, in turn, Bitner was dismissed as a party to this action.

[2] Although summonses were issued for Lang and Kessler, returns of the summonses were never entered on the docket. Nor does the docket indicate that Lang and Kessler are represented by counsel. In that regard, it is unclear whether these individual defendants have been served. In the event that Lang and Kessler were served, the Court notes that neither of them have filed an answer or moved to dismiss Plaintiff's First Amended Complaint.

1

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Frutta "is a franchise system that operates fruit bowl and smoothie locations[,]" and its principal place of business is located in Monmouth County, New Jersey. Amended Complaint ("Am. Compl."), ¶ 7. Bitner is a New Jersey resident who was formerly employed with Frutta, and is alleged to be Lang's brother. *Id.* ¶¶ 8-9. Lang and Kessler reside in Florida and wholly and exclusively control the Florida LLCs, both of which are Florida limited liability companies.[3] *Id.* ¶¶ 9-13.

In February 2016, Brooke Gagliano ("Brooke") and her father, Patrick Gagliano ("Pat"), developed a business model for Frutta, described as a tropical fruit bowl and smoothie eatery, with the intention of franchising the business nationwide. *Id.* ¶¶ 17, 22, 28. In June 2017, Brooke, Pat, and Bitner formally executed an employment agreement, pursuant to which Bitner was hired as an executive employee and provided with an equity interest in Frutta. *Id.* ¶¶ 30-31. His responsibilities included growing the franchise. *Id.* ¶ 29.

During the course of his employment, Bitner allegedly communicated Frutta's confidential and proprietary information to Lang, through either "daily phone calls" or electronic correspondences. *Id.* ¶¶ 37, 49. Specifically, Bitner is alleged to have provided Lang with highly sensitive materials including Frutta's "Franchise Construction Process Manual" ("Construction Manual") and the Operations Manual. *Id.* ¶¶ 37, 48. The Construction Manual is comprised of the following materials:

> instructions of 'how to' build out a store[,] . . . contact information for vendors[,] . . . architectural drawings[,] . . . photographs that demonstrate . . . how to ensure electrical and ductwork are efficiently installed[,] . . . and precise dimensions and illustrations regarding the aesthetic features that make the Frutta franchises distinctive and identifiable[.]

---

[3] Although not pled, Defendants have submitted a declaration in which they state that no members of the Florida LLCs are residents of New Jersey. Declaration of Jack E. Kessler (dated May 30, 2018) ("Kessler Dec."), ¶ 6. Plaintiff does not dispute this fact.

2

*Id.* ¶¶ 38-40. Moreover, the Operations Manual includes a "comprehensive reference for nearly all facets of operating a location with a comprehensive checklist, exhaustive lists of inventory and supplies, and a closing checklist for daily tasks, employment documents, and social media procedures." *Id.* ¶ 40. The communications between Bitner and Lang allegedly continued through July 2017, subsequent to which a Grain & Berry, developed by Lang, opened in Florida. Certification of Brooke Gagliano (dated July 9, 2018) ("Brooke Cert."), ¶ 7; Certification of Patrick Gagliano (dated July 8, 2018) ("Pat Cert."), ¶ 7. Grain & Berry is similarly in the business of selling fruit and smoothie products. Am. Compl., ¶ 1.

Following its opening, Frutta "received evidence" which "suggest[ed] that Grain & Berry had . . . used Frutta's trade secrets and knowhow in making [its] fruit products including information from [Frutta's] Operating Manual and Construction Manual." *Id.* ¶¶ 2, 51, 59. In this regard, Grain & Berry is alleged to share a "striking resemblance" with Frutta, such that the similarities between the two businesses are likely to cause confusion among ordinary customers in terms of "the source, sponsorship, affiliation, and quality of the products sold by Frutta and Defendants." *Id*. ¶ 3.

As a result, on February 21, 2018, Frutta brought the instant action against Defendants. Frutta subsequently filed its First Amended Complaint on May 30, 2018, in which the following nine counts are alleged against Defendants: (1) violation of Defense of Trade Secrets Act; (2) trade dress infringement; (3) violation of New Jersey Trade Secrets Act; (4) tortious interference with prospective economic advantage; (5) civil conspiracy to commit tort; (6) fraud in the inducement; (7) breach of fiduciary duty; (8) judicial expulsion under RULLCA; and (9) unjust enrichment. *Id*. ¶¶ 79-165.

Currently, the Florida LLCs move to dismiss Frutta's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and failure to state a claim. Frutta opposes the motion.

## II. DISCUSSION

### A. Standard of Review

To withstand a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendant by a preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *see Cerciello* v. *Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (noting that the plaintiff "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper.") (citation omitted). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Still, to meet its burden, the plaintiff must establish "jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Id*. at 101 (citation and internal quotation marks omitted). If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

4

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see* Fed. R. Civ. P. 4(e). In assessing whether personal jurisdiction exists, the Court's analysis is twofold: "[t]he court must first determine whether the relevant state long-arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process." *Display Works*, 182 F. Supp. at 172. "Since New Jersey's long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process,' [the Court must] 'look to federal law for the interpretation of the limits on in personam jurisdiction.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)).

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). In *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945), the Supreme Court held that a state may authorize its courts to exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (citation omitted). "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation . . . became the central concern of the inquiry into personal jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

**B.** **General Jurisdiction**

As a preliminary matter, the Court holds that the requirements of general jurisdiction are not met. Indeed, the Florida LLCs are neither incorporated nor maintain a principal place of business in New Jersey, and its members and employees are all located outside of this state. Kessler Dec., ¶¶ 4-6, 10. *See Daimler AG*, 571 U.S. at 137 (holding that, for a corporation, the "paradig[m] . . . bases for general jurisdiction" are its place of incorporation and principal place of business). Accordingly, the Florida LLCs are not subject to the general jurisdiction of this Court.

C. **Specific Jurisdiction**

As previously stated, Frutta's First Amended Complaint alleges the following nine counts against Defendants: (1) violation of Defense of Trade Secrets Act; (2) trade dress infringement; (3) violation of New Jersey Trade Secrets Act; (4) tortious interference with prospective economic advantage; (5) civil conspiracy to commit tort; (6) fraud in the inducement; (7) breach of fiduciary duty; (8) judicial expulsion under RULLCA; and (9) unjust enrichment. *Id*. ¶¶ 79-165.

Because general jurisdiction is lacking, Frutta must establish that the Florida LLCs are subject to the specific jurisdiction of this Court. That determination requires two sperate jurisdictional inquiries. Indeed, as to Counts Six through Nine, Plaintiff must demonstrate that the Florida LLCs have sufficient minimum contacts with the forum; on the other hand, because Counts One through Five arise from the Florida LLCs' alleged tortious conduct, they are subject to the *Calder* effects test. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 263-65 (3d Cir. 2008) (holding that a district court may treat a forum resident's claim of trademark infringement as an intentional tort, for the purpose of determining whether jurisdiction is proper over a non-forum defendant); *Miller v. Adler*, No. 17-7149, 2018 U.S. Dist. LEXIS 109044, at *6 (D.N.J. June 29,

2018) ("The *Calder* effects test . . . applies when an intentional tort is alleged.") (citation omitted).

### i. Minimum Contacts

In the absence of general jurisdiction, a plaintiff may rely on specific jurisdiction where the cause of action is related to, or arises out of, the defendant's contacts with the forum. *IMO Indus., Inc.*, 155 F.3d at 259 (citation omitted). In that connection, establishing specific jurisdiction under the Due Process Clause requires satisfaction of a three-part test. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe*, 326 U.S. at 320).

Plaintiff's jurisdictional analysis on this motion is confined to a single paragraph, wherein Plaintiff argues as follows: "Defendant Lang had continuous and systematic contact with Defendant Bitner. Lang reached into New Jersey to solicit Plaintiff's intellectual property. The intellectual property rights . . . were allegedly transferred by Bitner to Lang who in turn transferred them to" the Florida LLCs. Plaintiff's Opposition Brief, ("Pl.'s Opp."), at 9-10. Brook and Pat also provide identical certifications in which they state that the disputed information was transferred through communications between Bitner and Lang over a period of four months, following which the Florida LLCs were formed. Brooke Cert., ¶ 7; Pat Cert., ¶ 7.

However, I find these "contacts" insufficient for the purpose of establishing specific jurisdiction over the Florida LLCs.

Plaintiff attempts to satisfy its jurisdictional burden by imputing Lang's "contacts" with New Jersey, in the form of correspondences with Bitner, to the Florida LLCs. Notwithstanding the fact that Plaintiff does not cite to any case law or authority to support such a proposition, even if Lang's communications with Bitner may be imputed to the Florida LLCs, Plaintiff still fails to satisfy the requirement of minimum contacts. Indeed, the disputed conversations occurred *prior* to the formation of the Florida LLCs. Significantly, Plaintiff even concedes that the Florida LLCs were a "*mere thought* at the time of the alleged theft of Frutta's proprietary information and intellectual property rights[.]" Am. Compl., ¶ 16 (emphasis added). Therefore, because the Florida LLCs did not exist during the period in which the communications allegedly occurred, this cannot serve as a basis for establishing specific jurisdiction. In short, because Plaintiff does not allege any contacts that the Florida LLCs had with New Jersey after their formation, no minimum contacts can be found. The Court lacks personal jurisdiction over the Florida LLCs as to Counts Six through Nine.

### ii. *Calder* Effects Test

Plaintiff can only show a basis for exercising jurisdiction over the Florida LLCs as to the remaining tort claims if the factors of the *Calder* effects test are met.

Notably, the Third Circuit and federal courts within this district have applied the *Calder* effects test within the context of trademark infringement disputes. *See, e.g.*, *Budget Blinds, Inc.*, 536 F.3d at 263; *Patel v. Vanjani*, No. 12-821, 2012 U.S. Dist. LEXIS 199580, at *14 (D.N.J. Nov. 8, 2012); *Voltaix, LLC v. NanoVoltaix, Inc.*, No. 09-142, 2009 U.S. Dist. LEXIS 91380, at *6 (D.N.J. Oct. 1, 2009). Specifically, the test creates a jurisdictional basis in the absence of

minimum contacts, where a non-forum defendant commits an intentional tort[4] against a forum resident, if three factors are met:

> First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus., Inc.*, 155 F.3d at 261. Applied here, the Court finds that the elements of the *Calder* effects test are not satisfied.

At the outset, although the Florida LLCs maintain, in their briefing, that the *Calder* effects test fails to provide a basis for exercising jurisdiction over them, tellingly, Plaintiff did not address this argument. In that connection, because the burden of demonstrating jurisdiction falls on Plaintiff, the failure to respond is a basis to find that the Court lacks jurisdiction. Nevertheless, even if the Court were to apply the *Calder* effects test, jurisdiction over the Florida LLCs would remain lacking.

To begin, because the instant action arises from Defendants' alleged misappropriation of Frutta's confidential, proprietary, and trade secret information, the first factor of the test is satisfied. *See Budget Blinds, Inc.*, 536 F.3d at 263 (treating a trademark infringement claim as an intentional tort for the purposes of conducting a jurisdictional analysis under the *Calder* effects test). Likewise, the second factor of the test is satisfied, because Plaintiff's principal place of business is located in New Jersey. As such, the "brunt of the harm" which stems from Defendants' alleged infringement can be felt by Frutta in New Jersey. Nevertheless, the First

---

[4] Indeed, the Third Circuit has concluded that a district court may treat a claim of trademark infringement as an intentional tort, for the purpose of conducting a jurisdictional analysis over a non-forum defendant. *See Budget Blinds, Inc.*, 536 F.3d at 263-65.

9

Amended Complaint fails to allege facts in support of the third factor, from which the Court may conclude that Defendants' alleged infringement was "expressly aimed" at New Jersey.

"[T]he fact that harm in a certain state [is] foreseeable is not enough to show that a defendant's actions were expressly aimed at the forum." Rather, the third factor is generally met when "it is alleged that a defendant ha[s] a specific intent to harm [a] plaintiff in the forum in question or directly targeted some of its actives to the forum." *Voltaix, LLC*, 2009 U.S. Dist. LEXIS 91380, at *10-11; *see e.g., Gambone v. Lite Rock Drywall*, 288 Fed. Appx. 9, 13-14 (3d Cir. 2008) (finding that the defendants "expressly aimed" their tortious conduct at the forum, because they intended to preclude the plaintiff from collecting on a favorable judgment in the forum).

Although Frutta brings this action against Defendants "for trade dress infringement of Frutta's store design and trade secret misappropriation relating to Frutta's system of building, operating, and franchising eateries offering smoothies and [fruit] bowls," Frutta fails to allege that Defendants acted with the specific intent to develop a competing franchise for the purpose of harming Frutta in New Jersey. Am. Comp, ¶ 1. Nor does the record include any evidence to support that the complained-of tortious conduct was intended to be directed towards New Jersey. To the contrary, it appears, based on the allegations alone, that the activities of the Florida LLCs are confined within the state of Florida. Indeed, it is undisputed that the Florida LLCs are not qualified or registered to do business in New Jersey; they do not rent, own property, or employ anyone in New Jersey; and they have "never advertised, promoted, offered for sale, or otherwise conducted any business in the State of New Jersey or to any potential customers in the State of New Jersey." *Id*. ¶¶ 8-10, 14. Accordingly, there is no allegation, let alone evidence, to suggest that the Florida LLCs intended to direct their alleged tortious conduct into New Jersey and

therefore, the "expressly aimed" prong of the *Calder* effects test is not met. The Court lacks jurisdiction over the Florida LLCs as to Counts One through Five.

### III. CONCLUSION

For the foregoing reasons, the Florida LLCs' Motion is **GRANTED**. All claims against the Florida LLCs are dismissed without prejudice for lack of personal jurisdiction.

Dated: December 10, 2018

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge